ROGER KANE, as Administrator, etc., of EDWARD O'TOOLE, Deceased, Respondent, *v.* THE MITCHELL TRANSPORTATION COMPANY, Appellant.

*Negligence — the measure of damages to the next of kin is for the jury — fellow-servants in unloading a vessel — verdict, when not excessive.*

The measure of damages in actions for negligence brought for the benefit of the next of kin of a decedent must usually be left with the jury, there being no well-defined rule by which it can be determined.

Upon the trial of an action brought to recover damages resulting from the death of the plaintiff's intestate, caused by the alleged negligence of a deck hand belonging to a vessel owned by the defendant, it appeared that the deceased was working as a "scooper" in unloading grain which was being elevated from a vessel into a grain elevator, and that while so engaged one of the deck hands allowed a piece of timber used upon the deck to fall down the hatchway into the hold, and that in falling it struck and killed the deceased.

It was a custom at the port in question for each elevator to appoint in the spring a boss scooper, who had entire charge of elevating grain, and who hired and discharged and paid his assistants, who were known as scoopers; the charges for elevating were paid by the vessel, but, as a matter of convenience, the general secretary of the association of the elevators in the city received from all the vessels the money paid for elevating, and at the end of each week paid to the boss scooper his proportion of the moneys received, the balance of the money being paid to the elevator; the boss scooper divided this money amongst the scoopers according to the hours which each had worked during the week;

neither the master nor the owner of the vessel had anything to do with select-
ing the elevator, that matter being determined by the consignee. It further
appeared that after the scoopers had removed all the grain they could with their
shovels the vessel's crew attended to sweeping the decks and the hold, but that
the boss scooper had no control over the crew in any assistance which they
might render. At the time of the accident the crew were engaged in sweeping
the deck.

*Held,* that the deceased was not a fellow-servant with the deck hand who negli-
gently threw down upon him the piece of timber which caused his death, and
that the owners of the vessel were liable for the act of their employee.

It appeared that the deceased was twenty-six years old, unmarried, industrious
and earning about $400 per season, but had never contributed to the support
of his mother or other relatives, all of the latter being adults.

*Held,* that a verdict for $3,000 was not excessive.

APPEAL by the defendant, The Mitchell Transportation Company,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Erie on the 17th day
of March, 1894, upon the verdict of a jury rendered after a trial at
the Erie Circuit, and also from an order entered in said clerk's office
on the 6th day of September, 1894, denying the defendant's motion
for a new trial made upon the minutes.

*T. E. Tarsney,* for the appellant.

*John Laughlin,* for the respondent.

LEWIS, J.:

The deceased, Edward O'Toole, on the 27th day of October, 1892,
was working as a scooper, assisting in unloading a cargo of grain
from a steam barge known as the *A. Folsom,* which belonged to
the defendant.

The grain was being elevated into the Evans elevator in the city
of Buffalo. While thus engaged, a piece of timber belonging to
and used upon the deck of the vessel was negligently allowed to fall
down the hatchway of the vessel into the hold by one of the deck
hands of the vessel. In falling, it struck and killed the deceased.

The deck hand was at the time in the employ of the defendant,
working upon the deck of the vessel, and had occasion to move the
piece of timber. There is no controversy as to the foregoing facts,
and no question is made as to the deceased being free from negli-
gence contributing to his death.

Two questions, and two only, are argued by the appellant's counsel. It is his contention that the deceased and the deck hand were both in the employ of the vessel, and were, therefore, fellow-servants.

The business of transferring grain from vessels into elevators at the port of Buffalo has been carried on for years by all elevators of the city in the following manner : At the opening of navigation in the spring of the year, each elevator appoints what is known as a boss scooper for the season of navigation. He is given the entire charge of elevating grain out of vessels into the elevator. For that purpose he has charge of that portion of the machinery of the elevator which is used in connection with the vessel. He employs and discharges and pays his assistants, who are known as scoopers. Neither the elevator nor the vessel has anything to say or do as to whom he shall employ. He, with his men, attend to removing the grain from the hold of the vessel. A uniform price for this work is charged by all the elevators of the city. The charges are paid by the vessel. As a matter of convenience to all parties concerned, Mr. Cook, who is the general secretary of the association of elevators of the city, receives from all the vessels the money paid for elevating grain, and at the end of each week he pays to the boss scooper his proportion of the moneys so received during the week, and pays the balance thereof to the elevator. The proportion to which each is entitled is fixed by agreement between the elevator and the boss scooper at the commencement of the season. The boss scooper divides the money paid to him amongst the scoopers in his employ, *pro rata*, according to the number of hours each has worked during the week, retaining therefrom for himself an amount equal to that coming to the scooper who has worked the greatest number of hours during the week.

Neither the master nor the owner of the vessel has anything to do with selecting the elevator. That is determined by the consignee of the cargo. The master places his vessel at the elevator and attends to moving his vessel when it becomes necessary so to do in order to facilitate the unloading of the cargo. After the scoopers have removed all the grain they can with their shovels, the vessel's crew attend to sweeping the decks and the hold of the vessel. The work of sweeping the decks is sometimes commenced by the vessel's crew before all the grain is removed. The boss scooper

has no supervision or control over the vessel or its crew, nor of the work performed by them in and about the vessel, while the work of unloading is in progress.

A Mr. Eagan was the boss scooper at the Evans elevator, and was in charge of the work of unloading the cargo of the *Folsom* at the time of the accident. He employed his assistants, including the deceased.

It is true, as claimed by the appellant's counsel, that the scoopers and the crew of the vessel were engaged in a common undertaking. The scoopers were removing grain out of the vessel; the crew were sweeping up its decks. All of this work was necessary to be done to put the vessel in condition to take on and transport another cargo. It cannot, however, with any propriety, be claimed that they had a common employer.

While the money received by the scoopers came to them indirectly from the vessel, it was not received by them pursuant to any contract or arrangement between them and the owner of the vessel. The latter, so far as appears, had no knowledge as to the proportion of the elevator charges the scoopers were entitled to. Had the owners of the *Folsom* refused to pay for elevating the grain, neither the deceased nor Eagan could have maintained an action against the vessel for services performed. The defendant would not have been liable for the negligent act of a scooper while he was engaged in removing the cargo. The deceased and the deck hand were not, we think, fellow-servants within the meaning of the rule exempting an employer from liability for an injury to one employee by the act of another. Under the evidence the case was properly submitted to the jury.

Our conclusion is sustained by the following cases: *Svenson* v. *Atlantic Company* (57 N. Y. 108); *Sanford* v. *The Standard Oil Company* (118 id. 571); *Johnson* v. *Netherlands American Steam Navigation Company* (132 id. 576).

The appellant's counsel contends that the verdict was excessive. He claims that under the evidence the plaintiff was not in any event entitled to more than nominal damages. The verdict was for $3,000.

The deceased was twenty-six years old at the time of his death. He was unmarried. He was an industrious, sober man. He had

been working for a number of years during the season of navigation, in the city of Buffalo, shoveling grain from vessels. He earned at that business, upon an average, about $400 a season.

He left a widowed mother sixty-five years of age, who resided in Ireland with a brother of the deceased. She had no property. He left brothers and sisters, some of whom reside in Ireland, the others in this country. All of them were adults and were supporting themselves. The deceased was the youngest of the family. He was not shown to have ever contributed anything to the support of his mother or his other relatives. Under these circumstances it is claimed by the appellant that his next of kin suffered no pecuniary loss by his death. It is impossible to lay down any well-defined rule to guide courts and juries in determining what pecuniary damages, if any, the next of kin sustain in these negligence cases.

Whether a young child will live to arrive at an age when he will be able, by his labor, to accumulate property, and if so whether his next of kin will ever derive any benefit from his earnings, cannot in any way be demonstrated, and yet verdicts for substantial amounts in actions for the negligent killing of small children are sustained, and such verdicts are sustained in the case of the death of people who are quite advanced in years.

While the deceased had not been in receipt of an income which enabled him to lay by very much of his earnings, what his income might have been in after years had he lived, cannot, of course, be known.

The jury were furnished all the light upon the subject that the circumstances of the case permitted, and they determined that the next of kin had sustained $3,000 damages by the deceased's death.

That sum is probably larger than we would have awarded had the question been before us for decision. The jury upon whom, under our system of administering justice, is imposed the duty of deciding such questions, determined the amount, and we cannot say that it was so large as to indicate that any improper influences probably entered into their deliberations.

The judgment and order should be affirmed.

BRADLEY, J., concurred; WARD, J., not sitting.

Judgment and order affirmed.